[No. B199364. Second Dist., Div. Six. Jan. 28, 2009.]

SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff and Appellant, v.
JAMEY LYNN PARKS, Defendant and Respondent.

[No. B200267. Second Dist., Div. Six. Jan. 28, 2009.]

JAMEY LYNN PARKS, Plaintiff and Respondent, v.
SAFECO INSURANCE COMPANY OF AMERICA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

**COUNSEL**

Demler, Armstrong & Rowland, Robert W. Armstrong, Scott K. Murch; Law Offices of Raymond W. Scutts and Raymond H. Goettsch for Plaintiff and Appellant and for Defendant and Appellant.

Law Office of Herb Fox, Herb Fox; Pulverman and Pulverman, Martin E. Pulverman, Raymond J. Pulverman and James S. Bianchi for Defendant and Respondent and for Plaintiff and Respondent.

The Arkin Law Firm and Sharon J. Arkin for United Policyholders as Amicus Curiae on behalf of Defendant and Respondent and Plaintiff and Respondent.

**OPINION**

**YEGAN, J.**—Respondent Jamey Lynn Parks obtained a personal injury judgment of $2,187,886 against 16-year-old Michelle Miller. Safeco Insurance Company of America (Safeco) issued a homeowner's policy to Eddie Barnette, the man with whom Michelle's mother lived and with whom Michelle periodically stayed. It issued a similar policy to Michelle's grandmother Evelyn Miller, with whom Michelle and her father Charles resided. Safeco declined to defend Michelle, to settle Parks's action against her, and to indemnify her under the policy it issued to Barnette. Michelle assigned her causes of action against Safeco to Parks. When Parks later made a claim under the belatedly discovered policy issued to Evelyn Miller, Safeco paid Parks the $100,000 policy limits but refused to pay any part of the excess judgment.

A jury found that Safeco breached the covenant of good faith and fair dealing implied in the policy issued to Evelyn Miller when Safeco failed to settle the personal injury case or to defend or indemnify Michelle Miller. The trial court entered judgment in favor of Parks against Safeco for $3,245,333.76. It later awarded Parks costs of $70,104.23 and attorney fees of $426,208 as cost of proof sanctions for Safeco's failure to admit certain matters in response to Parks's requests for admission. (Code Civ. Proc., § 2033.420.)[1]

Safeco appeals from that judgment and from postjudgment orders entered in the related declaratory relief action. Parks cross-appeals in the bad faith action, contending the trial court improperly limited his recovery on a judgment creditor's claim.

We reverse the order awarding Parks his attorney fees as cost of proof sanctions. We affirm the judgments in all other respects.

*Facts*

We described the facts of the underlying accident in our prior published opinion, *Safeco Ins. Co. of America v. Parks* (2004) 122 Cal.App.4th 779 [19 Cal.Rptr.3d 17] (*Safeco I*), and again, more briefly, in our subsequent unpublished opinion, *Safeco Ins. Co. of America v. Parks* (Super. Ct. Santa

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

Barbara County, 2006, B185335) (*Safeco II*). In summary, during the early morning hours of February 28, 1999, Parks was walking on Highway 101 north of Santa Barbara when he was struck by a passing motorist. Parks suffered serious, permanent injuries in the collision, including having his leg amputated. He was on the side of the freeway because his then girlfriend, 16-year-old Michelle Miller, and two of her friends left him there. Miller had been driving Parks, who was drunk, from Santa Barbara to his home in Santa Maria when the car got a flat tire. She called a friend, Teresa Cooney, to pick them up. Cooney arrived with her friend Isaiah Rivera and the group started back to Santa Maria in Cooney's car. Parks was soon forced out of the car because he was being violent toward Miller. Over one mile and more than 15 minutes later, Parks was struck by a car as he walked back to his own car.

At the time, Miller lived with her father, Charles Miller, and grandmother Evelyn Miller, in a condominium rented by the grandmother. Miller's parents were divorced. Her father, Charles, had sole legal and physical custody of Michelle. Her mother was living with Eddie Barnette whom she later married. Miller sometimes stayed with her mother at Barnette's house. Barnette had a homeowner's insurance policy issued by Safeco.

Parks sued Cooney, Rivera and Miller. Cooney's automobile insurer provided all three with a defense, retaining Richard Phillips to represent them. Cooney and Rivera settled with Parks for the policy limits of $30,000. Phillips tendered Miller's defense to Safeco under the homeowner's policy issued to Barnette. Safeco declined the defense. Miller and Parks submitted their claims to binding arbitration. The arbitrator, a retired superior court judge, James Slater, found in favor of Parks, awarding damages of $2,187,886 after a 50 percent reduction for comparative fault. A judgment in that amount was entered against Miller in January 2002. Miller settled with Parks by assigning to him any claims she might have against Safeco.

In July 2002, Parks sued Safeco to recover the judgment he obtained against Miller (the bad faith action). He alleged that Safeco breached the Barnette policy and its implied covenant of good faith and fair dealing by refusing, in bad faith, to defend Miller under the Barnette policy and to settle within the limits of that policy. In August, Safeco filed a separate action for declaratory relief against Miller and Parks, alleging that it had no duty to defend or indemnify Miller under the Barnette policy (the declaratory relief action). The two cases were consolidated.

Parks served Safeco with requests for production of documents that asked Safeco to produce all "applicable insurance policy or polices providing coverage for the nature and extent of the damages alleged . . . ," and all "applicable umbrella insurance policy or policies providing coverage for the

nature and extent of the damages alleged . . . ." Safeco objected that the document requests were vague, ambiguous, overbroad, burdensome and oppressive and that the documents they sought were not relevant or reasonably calculated to lead to the discovery of admissible evidence. It declined to produce any documents in response to the requests. Parks did not move to compel further responses to the request for production of documents.

The bad faith action was stayed while the parties tried the declaratory relief action to the court sitting without a jury. Charles Miller testified at the trial. Afterwards, he went home and asked his mother Evelyn, apparently for the first time, whether she had any insurance on her condominium. Charles then discovered that Safeco had issued Evelyn a renter's insurance policy covering the condominium. He gave the policy to Michelle or to her lawyer.

In August 2003, the trial court entered a declaratory judgment in favor of Parks and against Safeco, finding that Safeco had a duty to defend and to indemnify Miller because she was an insured under the Barnette policy. The parties agreed to rescind the order consolidating the bad faith and declaratory relief actions and to stay the bad faith action "until further order of the court."

Safeco appealed the declaratory judgment in October 2003. In August 2004, we reversed, holding that Safeco had no duty to defend Miller under the Barnette policy because she was not an insured under that policy. (*Safeco I, supra*, 122 Cal.App.4th at pp. 792–794.)

In September 2004, Parks's counsel demanded that Safeco pay the policy limits under the policy issued to Evelyn Miller. Safeco assigned the claim to James Diley, an adjuster who had not participated in the prior coverage determination or the litigation between Safeco and Parks. Diley interviewed Charles Miller and reviewed portions of the transcripts of Charles and Michelle Miller's depositions in the personal injury action. He purposefully did not review the claims file for the Barnette policy because he wanted to make an independent evaluation of the present claim. Diley also did not review the arbitrator's award in *Parks v. Miller*. Within one week of receiving the demand letter from Parks's counsel, Diley concluded that Michelle was an insured under the policy issued to her grandmother and its automobile exclusion did not preclude coverage. He forwarded a check for the policy limits of $100,000 to Parks on September 17, 2004. In May 2005, after receiving another demand from Parks, Safeco forwarded to him a check for the $1,000 medical payments coverage limits.

In February 2005, Parks amended his complaint in the bad faith action to allege for the first time that Safeco had a duty under the policy issued to

Evelyn Miller (the Miller policy) to pay the judgment and that it breached the implied covenant of good faith by refusing to defend or indemnify Miller under the Miller policy.

As required by our decision in *Safeco I*, the trial court, in June 2005, entered a declaratory judgment in favor of Safeco. It later reversed itself, however, denying Safeco's motions for costs and attorney fees and eventually vacating the judgment entirely. The trial court reasoned that, although we held Safeco had no duty to defend Miller, we had not decided whether it had a duty to indemnify her. As a result, the trial court decided it had prematurely entered judgment in favor of Safeco.

Safeco appealed a second time. We reversed in *Safeco II*, holding that there could be no duty to indemnify without a duty to defend: "In the prior appeal, we considered only Safeco's potential duty to defend Miller under the Barnette policy. We held that it had no such duty. It follows that Safeco has no duty to indemnify Miller under that policy." (*Safeco II, supra*, B185335.) Our opinion noted that, while the holding in *Safeco I*, foreclosed continued litigation with respect to the Barnette policy, the declaratory judgment had no "res judicata or collateral estoppel effect on the question of whether Safeco owes a duty to defend or indemnify Miller" under the policy issued to her grandmother. (*Ibid.*)

On remand, the declaratory relief action was transferred to another department of the superior court and another trial court judge. That judge entered a judgment declaring that Safeco "had no duty to defend or indemnify defendant Michelle Miller" under the Barnette policy. The court reserved for future determination the question of whether Safeco was entitled to recover its costs as a prevailing party.

Meanwhile, the bad faith action proceeded to trial. The jury found in favor of Parks on both his judgment creditor's claim alleging breach of the Miller policy and his cause of action for breach of the covenant of good faith implied in that policy. The trial court entered judgment in favor of Parks, awarding damages of $3,245,333.76 and reserved the question of costs for a future hearing.[2]

In the declaratory relief action, Safeco sought a cost award of $234,986.00, which included a claim for $215,432 in attorney fees. Safeco contended it

---

[2] The damages award includes the amount of Parks's judgment against Miller ($2,187,886), interest on that judgment ($1,118,047.76), and attorney fees incurred to obtain policy benefits ($40,400). (*Brandt v. Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796].) The trial court awarded Safeco an offset of $101,000 for the amount it paid to Parks under the Miller policy.

was entitled to attorney fees as cost of proof sanctions, because Parks failed to admit, in response to a request for admission propounded by Safeco, "that Michelle Miller was not an insured" under the Barnette policy. (§ 2033.420.) Parks moved to tax all of Safeco's costs on the grounds that Safeco could not be declared the prevailing party unless it also prevailed in the bad faith action. He opposed the award of cost of proof sanctions because he contended that he had a reasonable ground for believing he would prevail on the issue of Miller's status as an insured under the Barnette policy. (§ 2033.420, subd. (b)(3).) The trial court continued the hearing until after the jury returned its verdict in the bad faith action. It then found that Safeco was not entitled to recover costs because, on balance, it was not the prevailing party. It further found that Safeco was not entitled to cost of proof sanctions because Parks reasonably believed he would prevail on the question of Miller's status as an insured.

In the bad faith action, the trial court awarded Parks costs of $70,104.23. Parks moved for cost of proof sanctions under section 2033.420, based on Safeco's failure to admit, in response to requests for admission, that it "owed Michelle Miller a defense under Evelyn Miller's policy . . . ," and that it "breached the implied covenant of good faith and fair dealing with regard to its claims handling of Parks v. Miller . . . ." The trial court awarded Parks attorney's fees of $426,208.

*Contentions*

Safeco appeals the judgment in the bad faith action. It contends (1) Parks's cause of action for breach of the covenant of good faith implied in the Miller policy is barred by the applicable statute of limitations; (2) the trial court erred when it denied Safeco's motion for summary adjudication of that cause of action because: (a) Miller did not comply with the policy's notice provisions; (b) Miller received an adequate defense from another insurer; and (c) there is no substantial evidence that Safeco rejected a policy limits settlement demand; (3) Parks and Miller impermissibly "split" their causes of action under the Miller policy; (4) Safeco had no duty to settle the personal injury action because the automobile exclusion in the Miller policy precludes coverage for Parks's injuries; (5) Safeco was denied its right to a jury trial on the amount of Parks's damages; (6) the trial court erred in its instructions to the jury concerning (a) the duty to initiate settlement negotiations, (b) Safeco's contract defenses, and (c) the definition of reasonable conduct by an insurer; (7) the trial court erred in removing from the jury's consideration the question of whether the judgment in the underlying personal injury action was collusive; (8) the trial court made erroneous evidentiary rulings relating to testimony by Parks's counsel and Safeco's conduct during discovery; (9) Parks was not entitled to recover attorney fees as damages pursuant to

*Brandt v. Superior Court, supra,* 37 Cal.3d 813; (10) the amount of the judgment was incorrectly calculated; (11) the trial court erred in awarding Parks his attorney fees as cost of proof sanctions; (12) the trial court erred in its cost award to Parks; and (13) the trial court erred in the declaratory relief action when it struck Safeco's memorandum of costs and refused to award Safeco its attorney fees as cost of proof sanctions.[3]

On the cross-appeal Parks contends the trial court erred when it granted Safeco summary adjudication of his judgment creditor's claim (Ins. Code, § 11580, subd. (b)(2)), to collect the entire judgment in the personal injury case. He makes a similar contention with respect to his first cause of action and requests that we reverse the judgment on that count if we reverse the judgment as to the cause of action for bad faith alleged in count 3. Because we affirm the judgments, except for the order granting Parks's attorney fees, we need not address the latter contention.

*Discussion*

[[ ]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. *Issues Raised in Safeco's Unsuccessful Motion for Summary Adjudication and the Absence Of Prejudice.*

Safeco moved for summary adjudication of Parks's cause of action for breach of the implied covenant on the grounds that its duties to defend, settle or indemnify never arose because Miller breached the policy's notice provisions; that Miller was not prejudiced by Safeco's failure to defend because she received a defense from another insurer; and that Safeco never rejected a policy limits settlement demand. The trial court denied the motion. Safeco contends this was error. Parks contends an order denying summary adjudication cannot be reviewed on appeal.

If a trial court denies summary judgment or adjudication because it erroneously concludes that disputed issues of material fact exist, and those issues are resolved against the moving party at a trial on the merits, the error in denying summary judgment "cannot result in reversal of the final judgment unless that error resulted in prejudice to defendant." (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833 [16 Cal.Rptr.2d 38]; see also *California*

---

[3] Although not a contention of Safeco in connection with this judgment, Parks invites us to "disapprove" our decision in *Safeco I* because, he contends, the "factual predicate" for that decision has been proven untrue. We will decline the invitation.

*See footnote, *ante,* page 992.

*Housing Finance Agency v. Hanover/California Management & Accounting Center, Inc.* (2007) 148 Cal.App.4th 682, 689 [56 Cal.Rptr.3d 92] [denial of summary judgment not prejudicial where jury later resolved fact issues adversely to moving party].) The applicable standard of prejudice is that described in article VI, section 13 of the California Constitution: a judgment cannot be set aside "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; see *Waller v. TJD, Inc., supra,* 12 Cal.App.4th at p. 833.) We apply that same standard of prejudice here.

### a. Notice to Safeco Under the Miller Policy.

Safeco argued that its duty of good faith and fair dealing under the Miller policy never arose because Michelle Miller tendered her defense only under the Barnette policy and there was no evidence Safeco had actual knowledge of the Miller policy when it declined the defense.[4] The trial court correctly rejected this argument because the adequacy of Safeco's investigation of Miller's claim and the prejudice it may have suffered from delayed notice were disputed issues of material fact.

■ The duty of good faith and fair dealing implied in every insurance contract includes a duty on the part of the insurer to investigate claims submitted by its insured. "[A]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 819 [169 Cal.Rptr. 691, 620 P.2d 141].) These duties, however, arise after the insured complies with the claims procedure described in the insurance policy. (*KPFF, Inc. v. California Union Ins. Co.* (1997) 56 Cal.App.4th 963, 977–978 [66 Cal.Rptr.2d 36]; *Paulfrey v. Blue Chip Stamps* (1983) 150 Cal.App.3d 187, 199–200 [197 Cal.Rptr. 501] [insurer's responsibility to investigate "would not arise unless and until" insured files claim or makes "good faith effort to comply with claims procedure . . . ."].) "[W]ithout actual presentation of a claim by the insured in compliance with claims procedures contained in the policy, there is no duty imposed on the insurer to investigate the claim." (*California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 57 [221 Cal.Rptr. 171].)

■ An insured's failure to comply with the notice or claims provisions in an insurance policy will not excuse the insurer's obligations under the policy

---

[4] It cannot seriously be disputed that had Safeco diligently conducted an investigation, it would have discovered the Miller policy. Had it timely notified Michelle Miller that the Miller policy existed, she undoubtedly would have made a claim pursuant to this policy.

unless the insurer proves it was substantially prejudiced by the late notice. (*Clemmer v. Hartford Ins. Co.* (1978) 22 Cal.3d 865, 881–883 [151 Cal.Rptr. 285, 587 P.2d 1098]; *Campbell v. Allstate Ins. Co.* (1963) 60 Cal.2d 303, 306 [32 Cal.Rptr. 827, 384 P.2d 155].) "Prejudice is not presumed from delayed notice alone. [Citations.] The insurer must show actual prejudice, not the mere possibility of prejudice." (*Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 761 [15 Cal.Rptr.2d 815].) Where, as here, the insurer denies coverage, it may establish substantial prejudice only by demonstrating that, "in the event that a timely tender of the defense [in the underlying action] had been made, it would have undertaken the defense." (*Clemmer v. Hartford Ins. Co., supra,* 22 Cal.3d at p. 883.) "If the insurer asserts that the underlying claim is not a covered occurrence or is excluded from basic coverage, then earlier notice would only result in earlier denial of coverage. To establish actual prejudice, the insurer must show a substantial likelihood that, with timely notice, and notwithstanding a denial of coverage or reservation of rights, it would have settled the claim for less or taken steps that would have reduced or eliminated the insured's liability." (*Shell Oil Co. v. Winterthur Swiss Ins. Co., supra,* 12 Cal.App.4th at p. 763.)

Here, Safeco's notice defense was rejected by the trial court on the motion for summary adjudication and later by the jury. Those decisions were correct because Safeco did not establish that it was prejudiced by the delayed notice. In the declaratory relief action, Safeco contended that, even if Miller was an insured under the Barnette policy, its automobile exclusion precluded coverage for this accident. Safeco now relies on the same automobile exclusion to contend there was no potential for coverage under the substantially identical Miller policy. As a result, both the trial court and the jury could reasonably infer that Safeco was not prejudiced by the late notice because it would have relied on the automobile exclusion to decline the defense under the Miller policy. Safeco suffered no prejudice by the order denying summary adjudication of the issue.

### b. Defense Provided by Another Insurer.

Safeco also argued that Miller was not damaged by its denial of a defense because she was defended by Cooney's automobile insurer, California Casualty Insurance Company. The trial court found that the question whether the lawyer did everything possible to defend Miller was a triable issue of fact. The jury later found that Miller was damaged by Safeco's failure to defend.

█ An insured is entitled to only one full defense. (*San Gabriel Valley Water Co. v. Hartford Accident & Indemnity Co.* (2000) 82 Cal.App.4th 1230, 1241 [98 Cal.Rptr.2d 807].) An insurer's refusal to defend "is of no consequence to an insured whose representation is provided by another insurer:

Under such circumstances, the insured '[is] not faced with "an undue financial burden" or deprived "of the expertise and resources available to insurance carriers in making prompt and competent investigations as to the merits of lawsuits filed against their insureds." [Citation.]' (*Ceresino* v. *Fire Ins. Exchange* (1989) 215 Cal.App.3d 814, 823 [264 Cal.Rptr. 30].)" (*Horace Mann Ins. Co. v. Barbara B.* (1998) 61 Cal.App.4th 158, 164 [71 Cal.Rptr.2d 350].) This result differs, however, where the insurer that accepts the defense has a policy limit far below the amount claimed, and far lower than that of the insurer that declines the defense. Under those circumstances, our Supreme Court has held, "where more than one insurer owes a duty to defend, a defense by one constitutes no excuse of the failure of any other insurer to perform." (*Wint v. Fidelity & Casualty Co.* (1973) 9 Cal.3d 257, 263 [107 Cal.Rptr. 175, 507 P.2d 1383]; see also *Campbell v. Superior Court* (1996) 44 Cal.App.4th 1308, 1320–1321 [52 Cal.Rptr.2d 385].)

Here the limit of liability on the Miller policy was $100,000. The limit of liability on the automobile policy was $30,000, split among Miller and her two codefendants. The codefendants settled for amounts within the policy limits. Miller, on the other hand, suffered an arbitration award and subsequent judgment of over $2 million. Safeco now contends the judgment may have been collusive, an issue that would not arise had Safeco furnished Miller a defense. Given these facts, the trial court correctly denied summary adjudication. Safeco was not prejudiced by the denial of summary judgment on this issue.[5]

### c.   Safeco's Rejection of Policy Limits Settlement Demand.

Safeco contended it was entitled to summary adjudication because it never received a policy limits settlement demand that referenced the Miller policy and its rejection of a demand under the Barnette policy could not breach the Miller policy. The trial court denied summary adjudication because it concluded that the facts were in dispute concerning the adequacy of Safeco's claims investigation and its receipt of the settlement demand. That ruling was correct. There was evidence from which a reasonable trier of fact could find that Safeco breached its duties under the Miller policy when it failed, in response to Michelle Miller's claim under the Barnette policy, to investigate whether it had issued any other policy that might cover her claim. That failure to investigate, in turn, led to Safeco's rejection of the policy limits settlement demand. Safeco was not prejudiced by the order denying summary adjudication.

---

[5] Safeco's nonparticipation in this arbitration led to its own detriment. Miller was in sore need of motivated counsel. The arbitrator ruled that Parks was 50 percent at fault. Given his actions, this number, in theory, could have been greater. He was inebriated, violent, and had no right to continue his assault on Miller. She had little choice to defend herself by putting Parks out of the car.

■ Among the duties imposed on an insurer by the implied covenant of good faith and fair dealing are the duty to investigate claims made by its insured and the duty to accept a reasonable settlement demand within policy limits. (*Egan v. Mutual of Omaha Ins. Co., supra,* 24 Cal.3d at p. 819; *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 659 [328 P.2d 198].) Ordinarily, an insurer breaches the implied covenant by denying an insured's claim without first thoroughly investigating "*all* of the possible bases" of the claim. (*Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1073 [56 Cal.Rptr.3d 312].) In discharging this duty, the insurer " 'may not ignore evidence which supports coverage. If it does so, it acts unreasonably towards its insured and breaches the covenant of good faith and fair dealing.' " (*Id.* at p. 1074, quoting *Mariscal v. Old Republic Life Ins. Co.* (1996) 42 Cal.App.4th 1617, 1624 [50 Cal.Rptr.2d 224].) Whether the insurer's investigation of a particular claim was reasonable " 'must be determined on a case by case basis and will depend on the contractual purposes and reasonably justified expectations of the parties.' " (*Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 346 [108 Cal.Rptr.2d 776], quoting *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1395 [272 Cal.Rptr. 387].)

■ Administrative regulations adopted by the Insurance Commissioner provide that, "Every insurer shall disclose to a first party claimant or beneficiary, all benefits, coverage, time limits or other provisions of any insurance policy issued by that insurer that may apply to the claim presented by the claimant." (Cal. Code Regs., tit. 10, § 2695.4, subd. (a).) An insurer's failure to comply with this regulation does not, in itself, establish a breach of contract or bad faith by the insurer. The regulations may, however, "be used by a jury to *infer* a lack of reasonableness on [the insurer's] part." (*Rattan v. United Services Automobile Assn.* (2000) 84 Cal.App.4th 715, 724 [101 Cal.Rptr.2d 6].)

Here, Safeco did not investigate whether any Safeco policy, other than the Barnette policy, provided coverage to Miller. The trial court denied summary adjudication because the facts were in dispute and could have supported a finding that Safeco's investigation was unreasonable. Safeco contends the trial court erred as a matter of law because neither the administrative regulation nor the implied covenant require Safeco to search for policies it has issued, other than the specific policy referenced by its insured in his or her claim. We are not convinced.

■ First, the plain language of California Code of Regulations, title 10, section 2695.4 contains no such limitation. The regulation requires an insurer to disclose to its insured the terms "of *any* insurance policy issued by that

insurer that may apply to the claim presented by the claimant." (Cal. Code Regs., tit. 10, § 2695.4, subd. (a), italics added.) Had the Insurance Commissioner intended to limit disclosure to the policy already relied on by the insured, this regulation would refer to "<u>the</u> insurance policy," not to "<u>any</u> insurance policy." Moreover, the regulations "delineate certain minimum standards for the settlement of claims . . . ." (*Id.*, § 2695.1, subd. (a)(1).) They do not provide "the exclusive definition of all unfair claims settlement practices." (Cal. Code Reg., tit. 10, § 2695.1, subd. (b).) Thus, just as a violation of the regulations does not, standing alone, prove the insurer acted unreasonably (*Rattan v. United Services Automobile Assn., supra*, at p. 724), compliance with them is not alone sufficient to prove reasonable conduct.

Second, whatever the scope of these administrative regulations, the conduct required of an insurer to discharge its duties of good faith and fair dealing will vary from case to case. (*Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co., supra*, 90 Cal.App.4th at p. 346.) In some cases, the insurer's investigation will only be reasonable if it includes a search for other policies issued by that insurer, in addition to the policy relied on by the insured. We need not here decide whether the insurer may also be obligated to search for other policies issued by other carriers. Here, it is only necessary to rule that it was unreasonable for Safeco not to search for other policies it had issued after concluding that there was no coverage under the Barnette policy.

An insurer's duty to conduct a reasonable investigation is not narrowly confined to the facts or theories of coverage relied on by its insured. For example, in *Jordan v. Allstate Ins. Co., supra*, 148 Cal.App.4th 1062, the insured made a claim against her homeowner's policy for structural damage in her living room, including failing floorboards. The damage was, her expert concluded, caused by a water conducting fungus. (*Id.* at p. 1067.) The homeowner's policy issued by Allstate excluded coverage for loss caused by "wet or dry rot" and for loss caused by "collapse." (*Id.* at p. 1068.) It provided " ' "additional coverage," ' " however, for the " ' "entire collapse" ' " of all or any portion of the house, where the collapse was " ' "a sudden and accidental direct physical loss caused by . . . hidden decay of the building structure . . . ." ' " (*Id.* at p. 1067, italics omitted.) Allstate relied on the dry rot exclusion to deny coverage. The insured asked Allstate to reconsider based only on her contention that the fungus was not "dry rot."[6] Allstate declined. It did not investigate whether the "additional coverage" for "entire collapse" might also apply.

---

[6] The insured contended she was unaware of the "additional coverage" because Allstate had not provided her with a complete copy of her homeowner's policy, despite her request for one. (*Jordan v. Allstate Ins. Co., supra*, 148 Cal.App.4th at p. 1075.)

The *Jordan* court reversed a summary adjudication in favor of Allstate on the insured's bad faith claim because the reasonableness of Allstate's investigation was a disputed factual issue. "[W]here an insurer denies coverage but a *reasonable investigation* would have disclosed facts showing the claim was covered, the insurer's failure to investigate breaches its implied covenant. The insurer cannot claim a 'genuine dispute' regarding coverage in such cases because, by failing to investigate, it has deprived itself of the ability to make a fair evaluation of the claim. [Citation.] Thus, although Allstate's interpretation of [the dry rot] exclusion was reasonable, it also had a duty to investigate [the insured's] coverage claim that was based on the 'additional coverage' provisions relating to an 'entire collapse,' which . . . was also reasonable and consistent with [the insured's] objectively reasonable expectations." (*Jordan v. Allstate Ins. Co., supra,* 148 Cal.App.4th at p. 1074.) A trier of fact could, the *Jordan* court concluded, find that Allstate unreasonably failed to consider the "additional coverage," even though the insured's claim did not mention that policy provision and even though she never provided Allstate with proof of an actual collapse. (*Id.* at pp. 1074–1075.)

██ *Jordan* is instructive here, even though it involved a single policy, because it demonstrates that the insurer's duty to investigate may extend beyond the facts and coverage theories advanced in an insured's claim. Here, Michelle Miller made a claim against the Barnette policy on the theory that she was an additional insured under that policy. Safeco concluded Miller was not an additional insured and declined coverage. At the same time, however, Safeco knew that Michelle Miller lived somewhere. It took the position that she lived with her father and grandmother at the David Road condominium. Safeco's claims file contains no evidence that Safeco ever searched its own records for potentially applicable Safeco policies issued to the adults with whom Michelle resided, or on her place of residence. Nor did Safeco interview Michelle's father or grandmother to determine whether they had Safeco policies that might cover her claim. These omissions occurred even though Safeco's unit manager instructed the adjuster to determine whether Michelle had other applicable insurance.[7] This evidence created issues of fact concerning whether Safeco acted unreasonably and breached the covenant of good faith and fair dealing implied in the Miller policy by failing, in response to Michelle Miller's claim under the Barnette policy, to investigate whether

---

[7] Pagach, the adjuster, testified that he called Miller's counsel to get the contact information for her father. Pagach never contacted the father directly because he learned from Michelle's lawyer that the father rented his house and had no renter's insurance. Casualty analyst Steve Small used only Eddie Barnette's name to search Safeco's policy database for additional policies that might apply. He found none. Small did not search for policies providing coverage to Miller's father or grandmother, nor did he look for policies covering the address of Miller's primary residence. Small testified he did not know at the time that Safeco's database could be searched by address.

any other Safeco policy covered her claim. Safeco suffered no prejudice when the trial court denied summary adjudication on this issue.

For the same reasons, we conclude that Safeco was not prejudiced by the order denying summary adjudication on the question of whether Safeco failed to accept a reasonable policy limits settlement demand. Michelle Miller made her initial claim in March 2001. Parks made a policy limits settlement demand two months later, in May 2001. Both the claim and the settlement demand referenced only the Barnette policy. At all times, however, Safeco took the position that Michelle Miller resided not with Barnette, but with her grandmother. That is why its adjuster and analyst had been directed by their unit manager to search for other potentially applicable Safeco policies. Its database was searchable by both name and address, and either search would have disclosed the Miller policy. Thus, if Safeco had performed the investigation its own manager considered adequate, it would have found the Miller policy. This is true regardless of the specific policy referenced in the insured's claim or the third party's settlement demand. In this unusual context, we conclude that Safeco's failure to conduct a reasonable search for other Safeco policies breached duties arising under the Miller policy to reasonably investigate and settle Michelle Miller's claim. Safeco cannot rely on its breach of the duty to conduct a reasonable investigation to shield itself from liability for breach of the related duty to accept a reasonable settlement demand.

Here, there was evidence that Safeco received the May 2001 settlement demand. Parks made the demand in a letter that was incorrectly addressed. Safeco contends it was never received. But there was substantial evidence to the contrary. Parks's counsel, Martin Pulverman, testified that he hand delivered the letter to the adjuster, Michael Pagach. The unit manager, Brent French, testified that he had never seen the demand letter, but the casualty analyst, Steve Small, testified that he had seen it in the file. The jury was permitted to credit the testimony of Pulverman and Small. In these circumstances, Safeco was not prejudiced by the order denying summary adjudication on this issue.

[[ ]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

4. *Automobile Exclusion.*

The Miller policy excludes coverage for damages, "arising out of the ownership, maintenance, use, loading or unloading of: . . . [¶] motor

---

*See footnote, *ante*, page 992.

vehicles . . . owned or operated by or rented or loaned to an 'insured.' " Safeco contends this exclusion bars coverage for all of Parks's damages because his injuries arose out of Miller's negligent driving or unloading of either his car or Cooney's. Safeco contends it was entitled to a directed verdict on this question. Parks contends Safeco is estopped to rely on the automobile exclusion because it paid the policy limits of the Miller policy without reference to the exclusion. He also argues the exclusion is inapplicable because he was injured while walking, after he left Cooney's car. Finally, Parks contends that coverage exists because Miller's negligence in abandoning him on the freeway was an independent, concurrent cause of his injuries.

■ In determining whether automobile use precludes coverage under a homeowner's policy, we ask whether automobile use was the "predominating cause/substantial factor" in causing the damages at issue? (*Prince v. United Nat. Ins. Co.* (2006) 142 Cal.App.4th 233, 245 [47 Cal.Rptr.3d 727]; *American Nat. Property & Casualty Co. v. Julie R.* (1999) 76 Cal.App.4th 134, 140 [90 Cal.Rptr.2d 119].) Where both insured risks and excluded risks "constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy." (*State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94, 102 [109 Cal.Rptr. 811, 514 P.2d 123].)

Thus, for example, in *State Farm Mut. Auto. Ins. Co. v. Partridge, supra,* 10 Cal.3d 94, the insured under a homeowner's policy negligently filed down the trigger mechanism on a gun so that it discharged with very little force. The same insured then put the gun in a car where it accidentally discharged while the insured was driving, injuring a passenger. Our Supreme Court held the automobile exclusion in the homeowner's policy did not preclude coverage for the passenger's injuries. "[A]lthough the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries. . . . [I]nasmuch as the liability of the insured arises from his non-auto-related conduct [in filing the trigger mechanism], and exists independently of any 'use' of his car, we believe the homeowner's policy covers that liability." (*Id.* at p. 103.)

Similarly, in *Ohio Casualty Ins. Co. v. Hartford Accident & Indemnity Co.* (1983) 148 Cal.App.3d 641 [196 Cal.Rptr. 164], the court held that an exclusion in a homeowner's policy for watercraft use did not apply to injuries suffered by a boat passenger who dove into the water from the anchored boat and was injured by another passing boat as she surfaced. According to the Court of Appeal, the homeowner's "negligence was not an act of omission in failing to supervise some aspect of the operation of the boat, such as loading or unloading, but was an act of commission in permitting [the passenger] to go swimming when it was unsafe to do so. . . . [T]he negligent supervision of

[the passenger's] swimming activities did not in itself constitute a use of the boat. . . . [T]he mere fact [the homeowner's] negligent act is *connected* to the use of the boat does not mean it is *dependent* on the use of the boat." (*Id.* at p. 647.)

Courts have reached the same conclusion where a vehicle is used only to transport the victim to the site where injury occurs. For example, in *American Nat. Property & Casualty Co. v. Julie R., supra*, 76 Cal.App.4th 134, an uninsured motorist used his car to drive the victim to a deserted location where he raped her inside the car. The Court of Appeal concluded the victim's uninsured motorist policy provided no coverage for her injuries because, "[T]he vehicle provided a favorable situs for the attack, but its use was a circumstance accompanying the rape, not a predominant cause or a substantial factor in Julie R.'s injury." (*Id.* at p. 142; see also *R. A. Stuchbery & Others Syndicate 1096 v. Redland Ins. Co.* (2007) 154 Cal.App.4th 796, 803 [66 Cal.Rptr.3d 80] [shuttle company's automobile policy provided no coverage for victim's rape where shuttle driver used van only to transport victim to site of rape].)

By contrast, in *National Indemnity Co. v. Farmers Home Mutual Ins. Co.* (1979) 95 Cal.App.3d 102 [157 Cal.Rptr. 98], the Court of Appeal concluded that the automobile exclusion precluded coverage under a homeowner's policy for injuries suffered by a child who leapt out of a car in which he had been a passenger immediately after it was parked. (*Id.* at pp. 108–109.) The child ran into the street and was hit by a passing car. Coverage for his injuries was excluded under the homeowner's policy issued to the driver of the parked car because she negligently failed to supervise and control the child while "unloading" him from the car. "There is a complete absence of conduct on the part of the insured which is independent of and unrelated to the 'use' of the vehicle. The conduct of the insured which contributed to the injury simply cannot be dissociated from the use of the vehicle." (*Id.* at p. 109.)

Similarly, *Prince v. United Nat. Ins. Co., supra*, 142 Cal.App.4th 233, held that an automobile exclusion precluded coverage under a homeowner's policy where the insured daycare provider left two children stranded in their car seats inside a locked van on a hot day. The children died of hyperthermia. Reasoning that the rapid onset of hyperthermia was particularly likely to occur in a motor vehicle, the court held that the vehicle, "far from being merely the situs of the injury, was itself 'the instrumentality' of it." (*Id.* at p. 245.)

In determining whether the Miller policy's automobile exclusion precludes coverage for Parks's injuries, our question is whether Miller's negligent "use, loading or unloading" of a car that was "operated by" or "loaned to" her was a predominating cause or substantial factor in causing Parks's injuries. Miller was a passenger in Cooney's car; she did not operate it. The only car she operated was Parks's. Thus, the exclusion applies, if at all, based on Miller's negligent "use, loading or unloading" of Parks's car.

Miller's negligent driving of Parks's car certainly set in motion the events that culminated in his injuries. But it was not the "predominating cause" or a substantial factor in causing those injuries. The subsequent negligence of Cooney, Rivera and Miller in removing Parks from Cooney's car and leaving him on the side of the highway was an independent, concurrent cause of his injuries that is connected to, but not dependent on Miller's use of Parks's car. (*Ohio Casualty Ins. Co. v. Hartford Accident & Indemnity Co., supra*, 148 Cal.App.3d at p. 647.) Her liability for that conduct would exist regardless of whether she used a car to transport Parks to the place where they were picked up by Cooney or to the place where Parks was later abandoned. (*State Farm Mut. Auto. Ins. Co. v. Partridge, supra*, 10 Cal.3d at pp. 102–103.)

This conclusion is consistent with the holding in *Farmers Ins. Exchange v. Reed* (1988) 200 Cal.App.3d 1230 [248 Cal.Rptr. 11]. Applying the same predominating cause/substantial factor test, the *Reed* court held that "injuries suffered by an intoxicated woman who was struck by a car as she walked home from a bar did not arise out of her husband's use of his insured vehicle within the meaning of his automobile liability insurance policy, even though he took the keys to that vehicle from her and left her at the bar without transportation. . . . [T]he independent acts of the woman herself and the driver who struck her broke any causal connection between the husband's use of his vehicle and her injuries." (*Id.* at pp. 1231–1232.)

Nor does Miller's conduct in "unloading" Parks from his own car into Cooney's create the necessary causal connection between Miller's use of that car and Parks's injuries. Unlike the child in *National Indemnity Co. v. Farmers Home Mutual Ins. Co., supra*, 95 Cal.App.4th 102, Parks did not wander into the highway immediately after he was removed from his car, or from Cooney's for that matter. He had walked for over a mile and more than 15 minutes before the collision occurred. (*Id.* at pp. 108–109.) The automobile exclusion in the Miller policy does not preclude coverage for Parks's injuries. Safeco's motion for directed verdict on this issue was correctly denied by the trial court.

[[ ]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 7. *Collusive Judgment.*

Safeco contends the trial court erred when it rejected a proposed special jury instruction on the question whether the judgment against Miller in the underlying personal injury action was collusive. The trial court declined the instruction because there was "no viable evidence to support it."

■ Generally, an insurer with notice of an action against its insured and an opportunity to defend will be bound by the judgment as to all issues litigated in that action. (*Clemmer v. Hartford Ins. Co., supra,* 22 Cal.3d at p. 884.) Where the insurer declines the defense, the insured "is free to make the best settlement possible with the third party claimant, including a stipulated judgment with a covenant not to execute. Provided that such settlement is not unreasonable and is free from fraud or collusion, the insurer will be bound thereby." (*Pruyn v. Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500, 515 [42 Cal.Rptr.2d 295]; see also *Samson v. Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 240–242 [178 Cal.Rptr. 343, 636 P.2d 32].) In this context, collusion occurs when the insured and the third party claimant work together to manufacture a cause of action for bad faith against the insurer or to inflate the third party's recovery to artificially increase damages flowing from the insurer's breach. (*Andrade v. Jennings* (1997) 54 Cal.App.4th 307, 327 [62 Cal.Rptr.2d 787]; see also *J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 18 [68 Cal.Rptr.2d 837].)

■ The insurer may raise collusion as a defense in a subsequent bad faith action. Where there is substantial evidence of collusion, its existence is a question of fact for the jury to determine. (*Andrade v. Jennings, supra,* 54 Cal.App.4th at p. 328.) Several factors are relevant to a determination whether a settlement is collusive. These include, "the amount of the overall settlement in light of the value of the case [citations]; a comparison with awards or verdicts in similar cases involving similar injuries [citations]; the facts known to the settling insured at the time of the settlement [citations]; the presence of a covenant not to execute as part of the settlement [citation]; and the failure of the settling insured to consider viable available defenses [citations]." (*Id.* at p. 331.)

Here, the trial court correctly determined there was no substantial evidence to support this defense. Safeco's evidence of collusion is that Miller assigned

---

*See footnote, *ante*, page 992.

her bad faith claims to Parks before the arbitration occurred, her codefendants settled before the arbitration, and the arbitration award was very large. This does not amount to substantial evidence that Miller and Parks colluded to manufacture her liability or Parks's damages. The matter was submitted to binding arbitration before a neutral arbitrator, a retired superior court judge. This fact alone lends credibility to the award and distinguishes the present case from those cited by Safeco, each of which involved a settlement. If there had been collusion between Miller and Parks at the arbitration, we presume that the retired superior court judge would have perceived as much and ruled accordingly.

Moreover, Miller's counsel at the arbitration testified that he provided her with a complete defense that "vehemently" denied any liability on her part. The defense focused on liability because it was counsel's professional opinion that, "there was not a lot . . . to dispute about [damages]. The gentleman had suffered horrific injuries, and it would have been stupid, and ill advised for me to suggest to the contrary." Miller and her codefendants presented evidence about what happened on the road the night Parks was injured and argued they breached no duty by ejecting Parks from the car. When Miller's counsel received the arbitration award, he requested that the arbitrator modify it because he believed the arbitrator failed to consider some important issues. The request was denied and Miller's counsel did not thereafter oppose Parks's motion to confirm the award in a judgment because he believed opposition would be futile.

Safeco submitted no evidence that Parks's arbitration award was unreasonably high in light of the value of the case or of awards in other, similar matters. The assignment to Parks is not by itself evidence of collusion. (*Samson v. Transamerica Ins. Co., supra*, 30 Cal.3d at pp. 240–241.) Although there was evidence that Miller's counsel did not pursue some available lines of inquiry—such as the hospital's negligence in permitting Parks to contract a serious infection—there was little if any evidence that these omitted issues constituted a "viable" defense, either to Miller's liability or to the amount of the award. Under these circumstances, the trial court did not err in removing the issue of collusion from the jury's consideration.

[[ ]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 992.

*Conclusion*

In the bad faith action (case No. B199364), we reverse the trial court's order dated May 29, 2007, granting Parks $426,208 in attorney fees as cost of proof sanctions. In all other respects, the judgments in both actions are affirmed. The parties shall bear their own costs and attorney fees on appeal.

Gilbert, P. J., and Perren, J., concurred.

A petition for a rehearing was denied February 18, 2009, and appellant's petition for review by the Supreme Court was denied April 29, 2009, S171080.