Filed 3/16/23  Timed Out v. Prisma Entertainment CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TIMED OUT LLC,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>PRISMA ENTERTAINMENT LLC,<br><br>　　Defendant and Respondent;<br><br>CHIPPEWA,<br><br>　　Intervenor and Appellant. | B309791<br><br>Los Angeles County<br>Super. Ct. No. BC663581 |

APPEAL from orders of the Superior Court of Los Angeles County, Gregory Keosian, Judge. Affirmed.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Christopher J. Bakes, and Caitlin E. Higgins for Intervenor and Appellant.

Conkle, Kremer & Engel, Eric S. Engel, and Zachary Page for Plaintiff and Respondent.

Hall Griffin and John T. Griffin for Defendant and Respondent.

_____

## INTRODUCTION

Intervenor and appellant Chippewa appeals from orders denying its motion to vacate the judgment and granting a motion for attorney's fees brought by plaintiff and respondent Timed Out, a limited liability corporation. Timed Out sued Prisma Entertainment, a limited liability corporation (Prisma) as the assignee of claims of six professional models whose images were misappropriated and used to promote a fully nude strip club operated by Prisma. Chippewa provided marketing and social media promotion services to Prisma.

Chippewa intervened in the action following the jury's $50,000 verdict and Timed Out's request for more than $500,000 in attorney's fees, which Prisma failed to oppose. Chippewa contended in the trial court, and continues to assert here, that the trial was a sham proceeding and the verdict obtained was the product of collusion and fraud. Chippewa's allegations stem from a partial settlement reached by Timed Out and Prisma. Although the settlement related to the claims of two models whose images were used by Prisma without Chippewa's involvement, it required Prisma to cooperate with Timed Out as to certain aspects of the trial, to assign its claims against Chippewa (e.g., for indemnification) to Timed Out, and to assist Timed Out in any future litigation against Chippewa.

The trial court denied Chippewa's motion to vacate the judgment, finding that the parties had conducted a legitimate and adversarial trial. We see no abuse of discretion in the court's

ruling. Chippewa also challenges the court's award of attorney's fees. We see no error in that ruling. Accordingly, we affirm the orders.

## FACTS AND PROCEDURAL BACKGROUND

### 1. The Parties

Timed Out is a company that specializes in the protection of privacy and publicity rights in the talent and modeling industry. As pertinent here, Timed Out received assignments of claims for misappropriation of images from six models: Jessica Charm Killings, Kristina Chai, Leanna Decker, Kimberly Cozzens, Ursula Mayes, and Katrina Van Derham.

Prisma owns and operates Plan B Gentlemen's Club (Plan B), a fully nude strip club in Los Angeles.

Chippewa is a California corporation. At all relevant times, Chippewa was doing business as Much and House Public Relations and Marketing Management. Prisma retained Chippewa in 2014 to provide social media strategy and publicity services.

### 2. The Operative Pleadings

Timed Out, as the assignee of the models' claims, sued Prisma, asserting causes of action for statutory and common law violation of the right of publicity. Specifically, Timed Out alleged that Prisma used the models' images in social media posts and on Plan B's website to market, promote, and advertise its business in a manner that suggested the models either endorsed the club or were working for the club as fully nude strippers. According to Timed Out, such use of the models' images diluted the value of the images and caused financial harm to the models in the form of lost income due to the negative association with a fully nude

3

strip club. Timed Out sought damages in excess of $265,000 as well as punitive damages.

Prisma filed a cross-complaint against Chippewa alleging that Chippewa was responsible for all aspects of its website, social media, and publicity. Prisma sought declaratory relief and various forms of indemnity. Chippewa answered the cross-complaint and filed a special answer to the complaint.

### 3.  Partial Settlement

The case was called for trial on January 15, 2020. After the jury had been impaneled but before opening statements, Timed Out advised the court that it had reached a partial settlement with Prisma. Specifically, Prisma and Timed Out had settled the claims of two of the six models, Kimberly Cozzens and Ursula Mayes.[1]

In general terms, the settlement required Prisma to pay Timed Out $175,000 to settle the two models' claims, to dismiss its cross-complaint against Chippewa, and to assign its legal claims against Chippewa to Timed Out. Prisma also agreed to cooperate in the "prompt and efficient" resolution of the trial. In addition, Prisma agreed that Timed Out could call Prisma's corporate representative, Frank Grundel, as a witness during trial and that Grundel would testify "truthfully and cooperatively." Prisma also agreed to "reasonably cooperate" with Timed Out in any future action by Timed Out against Chippewa. For its part, Timed Out agreed to limit its execution of any judgment obtained at trial against Prisma to $20,000.

---

[1] Chippewa had not provided the marketing services relating to those models' claims.

As required under the settlement, Prisma executed an assignment conveying to Timed Out all its claims against Chippewa and its insurers and it also immediately dismissed without prejudice its cross-complaint against Chippewa.[2]

### 4.    Trial; Verdict

Trial proceeded over the course of three days.[3] The jury found in favor of Timed Out on the claims of all four models and awarded a lump sum of $50,000 in damages. The court awarded additional costs and attorney's fees under Civil Code section 3344 in an amount to be determined.

### 5.    Posttrial Motions and Rulings

#### 5.1.   Motions

Timed Out filed a motion seeking attorney's fees of $504,369 and additional costs of $32,053.10[4] under Civil Code section 3344, subdivision (a) and Code of Civil Procedure section 1033.5, subdivision (c)(5). With respect to attorney's fees, Timed Out noted that its attorneys took the case on a partial contingency basis. And although the fees requested far exceeded the total amount recovered through the jury trial and the partial settlement, Timed Out asserted that such a request was not

---

[2] Chippewa's counsel had not been advised of the partial settlement or dismissal of the cross-complaint prior to the in-court announcement.

[3] Because the evidence presented at trial is not relevant to the issues on appeal, we need not summarize it.

[4] These costs were in addition to the $11,829.74 claimed in Timed Out's cost memorandum. Prisma did not move to tax those costs.

unusual. In particular, Timed Out observed that two trials[5] had been required and each trial accounted for approximately half of the requested fees. Prisma did not oppose the motion.

Timed Out served Chippewa with copies of its cost memorandum as well as its motion for attorney's fees and additional costs. Timed Out also advised Chippewa that the partial settlement with Prisma included an assignment to Timed Out of all Prisma's rights and claims against Chippewa. Chippewa immediately requested and received copies of the settlement and the assignment. Chippewa learned, among other things, that in exchange for the $175,000 settlement from Prisma relating to the claims of two of the six models, Timed Out had agreed to limit its enforcement of the judgment against Prisma to $20,000.

Shortly before Timed Out's motion for attorney's fees and additional costs was to be heard, Chippewa filed an ex parte application seeking leave to intervene in the action under Code of Civil Procedure section 387.[6] Chippewa noted that Prisma did not

---

[5] The first trial ended in a mistrial after jury selection, opening statements, and the presentation of testimony from two witnesses. The court granted Prisma's request for a mistrial, which was based on the death in the family of Prisma's trial representative, over Timed Out's objection.

[6] Subdivision (d)(1) of that section provides, "The court shall, upon timely application, permit a nonparty to intervene in the action or proceeding if either of the following conditions is satisfied: [¶] (A) A provision of law confers an unconditional right to intervene. [¶] (B) The person seeking intervention claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that

6

oppose Timed Out's posttrial cost and attorney's fees requests. And given that Chippewa could, at some point, be required to indemnify Prisma for the portion of the judgment over $20,000 as well as any award of attorney's fees and costs, Chippewa requested the opportunity to protect its interests by participating in the postjudgment phase of the litigation.

Over Timed Out's objection, the court granted Chippewa's request to intervene. The court continued the hearing on Timed Out's motion for attorney's fees and additional costs to give Chippewa time to oppose that motion.

Chippewa subsequently moved to vacate the judgment. Chippewa asserted that the judgment had been obtained by fraud and collusion and was therefore voidable. Specifically, Chippewa contended that the settlement was collusive on its face and, because the full terms of the settlement had not been disclosed either to the court or to Chippewa, it resulted in a sham trial designed to benefit Timed Out and Prisma, to the detriment of Chippewa. Due to the settlement, Chippewa contended, Prisma had not fully defended itself during the trial.

Timed Out and Prisma opposed the motion, asserting that the settlement was not collusive, that they were not obligated to disclose all the terms of the settlement, and, in any event, that Chippewa would have the opportunity to defend its interests if and when an action for indemnity was filed.

Chippewa also opposed Timed Out's request for attorney's fees. As in its motion to vacate, Chippewa argued the judgment had been procured by fraud and Timed Out's request for fees and

---

person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties."

costs should be denied in its entirety due to that fraud or on the basis of unclean hands. In the alternative, Chippewa asserted that the amount of fees requested—more than $500,000—was unreasonable and should be reduced.

### 5.2. Rulings

The court denied Chippewa's motion to vacate the judgment. The court found that the settlement and the assignment were not collusive, standing alone, as such arrangements are commonplace in the insurance context. And the court further found, contrary to Chippewa's contention, that Timed Out and Prisma had conducted an adversarial trial on the merits.

The court granted Timed Out's motion for attorney's fees and additional costs under Civil Code section 3344. The court found the amount of fees requested to be excessive and awarded fees of $306,378.30, a substantial reduction from Timed Out's original request.

## 6. Appeal

Chippewa timely appeals from the postjudgment orders denying its motion to vacate the judgment and granting Timed Out's motion for attorney's fees.

## DISCUSSION

## 1. The court did not abuse its discretion in denying Chippewa's motion to vacate the judgment.

Chippewa contends the court erred in denying its motion to vacate the judgment. Specifically, Chippewa asserts that the

8

settlement was collusive, resulted in a sham trial, and constitutes extrinsic fraud.[7] We disagree.

### 1.1. Standard of Review

We review an order denying a motion to vacate made on equitable grounds for an abuse of discretion. (See *Hudson v. Foster* (2021) 68 Cal.App.5th 640, 661.) " 'In doing so, we determine whether the trial court's factual findings are supported by substantial evidence [citation] and independently review its statutory interpretations and legal conclusions [citations].' [Citation.] [¶] ' "In assessing whether any substantial evidence exists, we view the record in the light most favorable to respondents, giving them the benefit of every reasonable inference and resolving all conflicts in their favor." [Citation.]' [Citation.] ' "A finding … based upon a reasonable inference … will not be set aside by an appellate court unless it appears that the inference was wholly irreconcilable with the evidence. [Citations.]" [Citation.] "[W]hen the evidence gives rise to conflicting reasonable inferences, one of which supports the finding of the trial court, the trial court's finding is conclusive on appeal. [Citation.]" [Citation.]' [Citation.]" (*Ibid.*)

### 1.2. Analysis

"Extrinsic fraud usually arises when a party is denied a fair adversary hearing because he has been 'deliberately kept in

---

[7] Chippewa also claims the court abused its discretion by failing to address Prisma's counsel's duty to fully disclose the terms of the settlement. Because Chippewa cites no legal authority to support its argument, we disregard it. (See *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656 [noting that matters not properly raised or that lack adequate legal discussion will be deemed forfeited].)

ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.' [Citation.] Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.' (*United States v. Throckmorton* (1878) 98 U.S. 61, 65–66.)" (*Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471; *Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.* (2020) 56 Cal.App.5th 894, 910–911.)

" ' "Collusion has been variously defined as (1) 'a deceitful agreement or compact between two or more persons, for the one party to bring an action against the other for some evil purpose, as to defraud a third party of his right'; (2) 'a secret arrangement between two or more persons, whose interests are apparently conflicting, to make use of the forms and proceedings of law in order to defraud a third person, or to obtain that which justice would not give them, by deceiving a court or its officers'; and (3) 'a secret combination, conspiracy, or concert of action between two or more persons for fraudulent or deceitful purposes.' [Citation.]" [Citation.]' [Citation.]" (*Andrade v. Jennings* (1997) 54 Cal.App.4th 307, 327 (*Andrade*) [citing *Span, Inc. v.*

*Associated Internat. Ins. Co.* (1991) 227 Cal.App.3d 463, 484].) In the insurance context, "collusion occurs when the insured and the third party claimant work together to manufacture a cause of action for bad faith against the insurer or to inflate the third party's recovery to artificially increase damages flowing from the insurer's breach." (*Safeco Ins. Co. of Am. v. Parks* (2009) 170 Cal.App.4th 992, 1013 (*Safeco*).)

The court found that the settlement, standing alone, did not evidence fraud or collusion. In particular, the court noted that similar agreements have been routinely upheld in the insurance context, i.e., when an insurer fails to defend an insured against a claim brought by a third party and the insured settles the claim and assigns its rights against its insurer to the third party. (See, e.g., *Safeco, supra*, 170 Cal.App.4th at p. 1013 ["Where the insurer declines the defense, the insured 'is free to make the best settlement possible with the third party claimant, including a stipulated judgment with a covenant not to execute. Provided that such settlement is not unreasonable and is free from fraud or collusion, the insurer will be bound thereby.' "].) Chippewa apparently concedes the point but maintains there is additional evidence of fraud and collusion the court failed to consider when it denied the motion to vacate the judgment.

Chippewa compares the present case to *Andrade, supra. Andrade* is distinguishable, however. That case involved an injured ship captain, his employer, the employer's insolvent insurer, and the employer's excess insurer committed to insure claims in excess of $1 million. (*Andrade, supra*, 54 Cal.App.4th at pp. 312–314.) The captain and his employer negotiated a settlement of $1.5 million and the captain subsequently obtained a judgment close to that amount after a prove-up hearing in

11

which the employer did not participate. (*Id*. at pp. 320–321.) The reasonable settlement value of the captain's claim, however, was between $150,000 and $250,000. (*Id*. at p. 329.) The captain had agreed not to enforce the judgment against the employer and, because the primary insurer was insolvent, the inflated settlement amount was specifically designed to trigger the employer's excess coverage. (*Id*. at pp. 329–330.) The settlement negotiations and signed agreement, as well as its terms, were concealed from the excess carrier. (*Id*. at pp. 330, 334.)

The court of appeal affirmed the jury's finding in favor of the excess insurer that the settlement and subsequent judgment were the result of collusion between the captain and the employer. (*Andrade, supra*, 54 Cal.App.4th at pp. 329–334.) The court focused its analysis on several key factors, none of which are present in the case at bar. Mainly, the court noted the substantial disparity between the reasonable value of the captain's claim ($150,000 to $250,000) and the judgment (in excess of $1.5 million.) (*Id*. at p. 331.) In the present case, however, no such disparity exists, as Timed Out requested $95,000 in damages and the jury awarded $50,000. The *Andrade* opinion also noted that the amount of the settlement between the captain and his employer was far higher than any settlement or judgment in any similar case in recent memory. (*Ibid*.) Here, there is no evidence that a $50,000 verdict relating to the four models' claims is out of line with verdicts and settlements of similar cases. Indeed, the only evidence in the record on this point is the settlement in which Prisma agreed to pay $175,000 to settle two models' claims. By comparison, the $50,000 jury verdict relating to four models' claims seems reasonable. Finally, and as to the quality of the defense offered, the employer in

12

*Andrade* stipulated to liability, did not contest damages, made no opening or closing argument, presented no evidence, and did not object to any evidence submitted by the captain. (*Id*. at p. 320.) As a result, the captain received a judgment in the amount he requested. (*Id*. at pp. 320–321.) But there, the evidence suggested that the captain's case suffered from serious flaws, including the absence of evidence of causation and evidence of the captain's contributory negligence. (*Id*. at pp. 331–332.) The present case is not analogous, as we now explain.

Chippewa claims that the settlement, and particularly Timed Out's agreement to cap its enforcement of the judgment against Prisma at $20,000, "gave Prisma the assurance it needed to only present a perfunctory and halfhearted defense that was mostly aimed at *assisting* Timed Out in prevailing at trial." The court, however, rejected Chippewa's position and found that "the judgment entered in this action was not the product of collusion. Prisma and Timed Out conducted a full trial on the merits of the claims of four models; Prisma presented opening argument, conducted cross-examination, and offered closing arguments that cited the testimony elicited in cross-examination. In that argument, Prisma argued not merely for a reduction in damages, but also argued that the four models at issue had not been harmed at all by Prisma's misappropriation." In addition, the court noted, Timed Out sought $95,000 in damages for the four models and recovered a substantially reduced amount of $50,000.

The court's findings are supported by substantial evidence. We have reviewed the trial transcript and agree that the parties conducted a legitimate and adversarial proceeding. In addition, two of the attorneys representing Prisma submitted declarations in support of Timed Out's opposition to Chippewa's motion to

13

vacate the judgment.[8] Both attorneys explained that they had hoped to obtain a defense verdict in the case, relieving Prisma (and, potentially, Chippewa) of *any* liability to the four models. The attorneys also attested that the terms of the settlement were not confidential or secret—they simply were never asked to provide a copy of the settlement to Chippewa.

Chippewa also insists that the trial was rigged in Timed Out's favor because the settlement required Prisma to cooperate with Timed Out in certain respects. For example, the settlement required Prisma to allow Timed Out to call its corporate representative Frank Grundel as part of its case in chief and further required Prisma to make Grundel available for an interview prior to his testimony.[9] Although such a practice may not be commonplace, nothing about the provision suggests malicious or deceptive intent, inasmuch as it requires Grundel to testify truthfully. In any event, Chippewa does not contend that Grundel's testimony was either false or unduly influenced by Timed Out. In other words, Chippewa has not explained how this settlement provision resulted in any detriment.

Chippewa also complains that Prisma failed to object to certain testimony and failed to dispute that Timed Out was the

---

[8] Prisma joined Timed Out's opposition.

[9] The settlement states, "Prisma agrees that Timed Out may, in its sole discretion, call Frank Grundel as a witness in its case in chief in the Action, and that Mr. Grundel will testify truthfully and cooperatively with Timed Out. Prisma will make Mr. Grundel reasonably available to Timed Out's counsel in advance of his trial testimony to interview for purposes of the trial testimony, and Mr. Grundel will cooperate and speak truthfully with Timed Out's counsel."

assignee of each of the models' claims. But again, Chippewa has not cited any testimony that was, in fact, objectionable nor does Chippewa claim that Timed Out was not the assignee of the models' claims. To demonstrate that it was harmed in some way by the settlement and subsequent trial, Chippewa must do more than note the absence of objection. It must also explain why a valid evidentiary objection should have been made and how the failure to make the objection resulted in some harm.

In addition, Chippewa repeatedly claims that it was "deprived … of the opportunity to present its defense and meaningfully participate in the trial" by "misleading statements and partial disclosure regarding the terms and scope of the settlement agreement." Specifically, Chippewa relies on the following colloquy:

Mr. Page:[10] "Your Honor, before we do that, over the weekend, Timed Out and Prisma were able to resolve some of the issues in the case that's going to—that's going to streamline the trial a little bit and reduce some of the time. I think we need to take a few procedural steps to put that into effect.

Court: "Okay.

Mr. Page: "In general terms, at least as it concerns the court, is that we'll no longer be hearing and the jury will not be deciding the claims as it relates to Ms. Cozzens and Ms. Mayes. [¶] If he hasn't already, I understand that [counsel for Prisma] is going to be filing a request for dismissal of the cross-claim without prejudice, and I think that would take Chippewa out of the case and narrow that issue so the jury would not be deciding it anymore.

---

[10] Counsel for Timed Out.

Court: "Okay.

[¶] … [¶]

Court: [to counsel for Chippewa] "Ms. Vallejo, you are off the hook. We'll go ahead and dismiss without prejudice as to the cross-complaint."

From there, Chippewa argues that "[a]s a result, Chippewa was excluded from the trial and prevented from presenting a defense." We disagree with Chippewa's characterization of the events. First, Chippewa was not prevented from presenting a defense. By virtue of the dismissal of the cross-complaint, Chippewa was no longer required to defend against Prisma's indemnity claims at the trial. To the extent the indemnity issue might arise in a future proceeding, nothing in the settlement or assignment restricts Chippewa's ability to defend itself. In other words, the dismissal of the cross-complaint changed the timing, not the substance, of the litigation of the indemnity issue.

Second, and as to the models' claims, Chippewa was not excluded from the trial, as evidenced by the fact that Chippewa's counsel attended the remainder of the trial. Nor was Chippewa prevented from assisting Prisma in defending against Timed Out's claims. Although Chippewa's counsel observed the trial from the gallery rather than at counsel table, that appears to have been her choice. Both counsel for Prisma indicated that Chippewa's counsel was never asked to leave counsel table or told not to participate in the defense of Timed Out's claims, and nothing in the settlement impacted her ability to do so.

In any event, Chippewa was aware from the outset of the litigation that it might be required to indemnify Prisma for any damages recovered. Nothing in the settlement or assignment altered Chippewa's potential liability to Prisma or prevented it

from intervening in the action if it believed Prisma was not adequately protecting itself and, by extension, Chippewa.

**2. The court did not abuse its discretion by excluding attorney declarations submitted in opposition to the motion for attorney's fees.**

Chippewa challenges the award of attorney's fees to Timed Out on two grounds. Neither has merit.

First, Chippewa contends the order awarding attorney's fees is "infected by the same fraud and collusion that allowed Timed Out to obtain a verdict in its favor in the first instance." But as we have said, the court's finding that the judgment was not the result of fraud or collusion is well supported. Chippewa's argument fares no better with respect to the attorney's fee award.

Second, Chippewa asserts that the court erred by excluding two expert declarations submitted in support of its opposition to Timed Out's motion for attorney's fees. We review the court's ruling on the admissibility of expert opinion evidence for an abuse of discretion. (See *King v. State of California* (2015) 242 Cal.App.4th 265, 293 (*King*).)

Chippewa had argued in its opposition to Timed Out's motion for attorney's fees that no fees should be awarded because Timed Out's attorneys violated various Rules of Professional Conduct and Business and Professions Code section 6068. On this point, Chippewa submitted "declarations of two attorney ethics experts, David B. Parker and Murray B. Greenberg, each of whom opines that Timed Out's counsel violated Rules of Professional Conduct, Rules 3.3, 3.4, and 8.4 and [Business and Professions] Code § 6068." The court sustained Timed Out's objections to both declarations, stating that the "testimony concerning the violation of ethical obligations or the collusive

17

nature of the trial are legal issues that are properly the province of this court to decide." We agree.

"An expert witness's opinion testimony must be '[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' (Evid. Code, § 801, subd. (a).) Although otherwise admissible opinion evidence 'is not objectionable because it embraces the ultimate issue to be decided by the trier of fact' (*id.*, § 805), an expert is not allowed 'to testify to legal conclusions in the guise of expert opinion. Such legal conclusions do not constitute substantial evidence. [Citation.] "The manner in which the law should apply to particular facts is a legal question and is not subject to expert opinion." ' [Citation.]" (*King, supra*, 242 Cal.App.4th at p. 292.) In support of its ruling, the court quoted the following passage from *Summer v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, which is directly on point: " 'While in many cases expert opinions that are genuinely needed may happen to embrace the ultimate issue of fact (e.g., a medical opinion whether a physician's actions constitute professional negligence), the calling of lawyers as "expert witnesses" to give opinions as to the application of the law to particular facts usurps the duty of the trial court to instruct the jury on the law as applicable to the facts, and results in no more than a modern day "trial by oath" in which the side producing the greater number of lawyers able to opine in their favor wins. [Citation.]' " (*Id.* at p. 1179.) Although the issue was for the court, rather than the jury, to decide, the point is equally applicable.

Both expert declarations offered by Chippewa recite the applicable law (provisions of the Business and Professions Code and the Rules of Professional Conduct), summarize the pertinent

18

facts (statements to the court, content of the settlement, and the like), and then apply the law to the facts. Greenberg's declaration, for example, ends with the following statement: "I conclude that the Agreements themselves, Timed Out's and Prisma's failures to disclose, and Timed Out's and Prisma's acts in furtherance of the Agreement breached the named Rules of Professional Conduct, Rules 3.3, 4.1, and 8.4, and Business and Professions Code section 6068[, subdivision] (d). All have been materially violated. These Agreements were not akin to stipulating regarding the conduct of trial, because stipulations regarding trial must be disclosed to the Court and become part of the record. Here, the opposite occurred. The parties avoided disclosure to the Court."[11] Plainly, the "opinions" found in the declarations were, in fact, legal conclusions on an issue committed to the discretion of the court. As such, they were properly excluded.

---

[11] Parker's declaration is nearly identical to Greenberg's. Parker's concluding statement, quoted above, is identical to Greenberg's, but adds to the final sentence, "and contrived to create the false appearance of a contested trial."

## DISPOSITION

The orders denying the motion to vacate the judgment and granting the request for attorney's fees are affirmed. Respondents Timed Out, LLC and Prisma Entertainment, LLC shall recover their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, Acting P. J.

WE CONCUR:


EGERTON, J.


NGUYEN, (KIM) J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.