Filed 5/28/26  Yu v. West Bend Mutual Ins. Co. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| BANN-SHIANG LIZA YU, | |
| Plaintiff and Appellant, | G064542 |
| v. | (Super. Ct. No. 30-2009-00255065) |
| WEST BEND MUTUAL INSURANCE COMPANY, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, William D. Claster, Judge. Affirmed.

Lex Opus, Mohammed K. Ghods, Jeremy A. Rhyne and Lori L. Speak for Plaintiff and Appellant.

Kirtland & Packard and Robert A. Muhlbach for Defendant and Respondent.

Since 2009, plaintiff Bann-Shiang Liza Yu has pursued claims against multiple insurance companies for, inter alia, breach of the implied covenant of good faith and fair dealing and for contribution following settlements in a construction defect lawsuit filed over 20 years ago. Those settlements included assignments to Yu of various parties' rights to pursue those insurers which did not participate in the construction defect action.

This appeal is from the judgment entered in favor of one of those insurers, defendant West Bend Insurance Company, following a bench trial on stipulated issues remaining in the case. The trial court issued a statement of decision containing the court's finding that neither Yu nor West Bend's insured, ATMI Design Build, provided West Bend notice of Yu's construction defect action against ATMI until well after Yu settled with ATMI. In light of the notice and no-voluntary-payments provisions contained in the relevant West Bend insurance policies and governing law, the court concluded Yu is unable to recover against West Bend on any theory.

We affirm. Substantial evidence supports the trial court's findings on notice. Because those findings are dispositive as to West Bend's liability to Yu in this case, we do not address Yu's challenges to other rulings and findings by the court which limited the type and amount of recovery she might have been entitled to had West Bend been provided notice.

FACTUAL AND PROCEDURAL HISTORY

I.

THE CONSTRUCTION PROJECT

In January 2002, Yu, a developer, entered into a contract with ATMI to act as the general contractor for the construction of a hotel in Anaheim (the project). (*Yu v. West Bend Mutual insurance Company* (Feb. 14,

2

2018, G053358) [nonpub. opn.] (*Yu*).) Construction on the project began in September 2002.

In 2004, ATMI allegedly abandoned the project. Himes Peters Jepsen Architects (HPJA), with which Yu had already contracted to act as architects on the project, took over as the general contractor for the project. (*Yu, supra*, G053358.)

## II.

### ATMI IS INSURED BY, INTER ALIA, WEST BEND

West Bend issued annual comprehensive general liability policies to ATMI from June 30, 2000, through June 30, 2003 (West Bend policies). (*Yu, supra*, G053358.) The West Bend policies contained provisions requiring ATMI to notify West Bend as soon as practical if a claim is made or a lawsuit is brought against it. The West Bend policies also contained a no-voluntary-payment provision prohibiting ATMI, except at its own cost, from voluntarily making a payment, or assuming an obligation, or incurring any expense without West Bend's consent.

ATMI was thereafter insured by American Zurich Insurance Company (American Zurich) and Zurich American Company (Zurich American). (*Yu, supra*, G053358.)[1]

## III.

### THE CONSTRUCTION DEFECT ACTION

In October 2004, after problems developed during construction, Yu filed a construction defect action naming as defendants ATMI and numerous entities and individuals, including subcontractors on the project

---

[1] We sometimes refer to American Zurich and Zurich American collectively as "Zurich."

3

(collectively, the ATMI parties) and HPJA. (*Yu, supra*, G053358; *Yu v. Century Surety Company* (Feb. 27, 2014, G048427) [nonpub. opn.].)

On July 5, 2006, attorney William Schuster, solely on behalf of ATMI's responsible managing employee, defendant Richard Marko, sent a letter (the 2006 Schuster letter) addressed to American Zurich's claims department, Marsh, Inc., and the Columbian Agency, Inc.[2] Columbian served as an agent for "multiple insurers."

The "[r]e" line of the 2006 Schuster letter stated as follows:

"Tender of Defense and Indemnity

"Insured: ATMI Design-Build; ATMI Precast

"Our Client: . . . Marko

"Policy: American Zurich . . .

"No. GL3486626

"American International Specialty Lines Umbrella,

No. BE3205850

"Lawsuit: *Bann-Shiang Liza Yu v. ATMI Design Build, et al.*

"Orange County Superior Court Case No. 04CC00683."

In the 2006 Schuster letter, Schuster specifically sought to invoke coverage under the specified American Zurich policy and an umbrella policy issued by American International Specialty Lines. The letter stated in part: "We understand that ATMI . . . is one of the named insureds under the above-referenced insurance policies issued by American Zurich . . . . We understand that the Commercial General Liability Policy . . . appl[ies] to the claims in this case made against our client, . . . Marko."

---

[2] ATMI was separately represented by attorney Edward Picozzi during this timeframe. In May 2006, the Klinedinst PC firm associated in as counsel for ATMI.

The 2006 Schuster letter concluded by stating: "Marko is entitled to both defense and indemnity *under the subject GCL Policy*. [¶] At this time, we are requesting your immediate confirmation of the receipt of this tender of defense and indemnity and an acknowledgement that the tender will be accepted on . . . Marko's behalf. There are several matters currently pending which require immediate attention, including upcoming depositions of the plaintiff and her representative and . . . Marko's production of documents. [¶] I will appreciate receiving confirmation of your receipt of this tender and the related file materials. I will be happy to provide any and all materials that we have or that are available to us to assist you with the opening of your file and processing of this claim. [¶] Thank you for your prompt courtesy and attention to this matter." (Italics added.)

American Zurich thereafter provided ATMI a defense in the construction defect action.

IV.

ATMI AND HPJA SETTLE YU'S CLAIMS AGAINST THEM AND ASSIGN TO HER THEIR RIGHTS TO SUE "NON-DEFENDING INSURERS"

On March 25, 2008, Yu settled with the ATMI parties. Under the terms of the settlement agreement, the ATMI parties agreed to pay Yu $6 million and further agreed, along with Zurich, to assign to Yu any claims any of them had or might have had against any other person arising out of the construction defect action. The assignment provision in the agreement concluded: "This assignment includes without limitation any rights to which Zurich would otherwise become subrogated through the Zurich/ATMI Policies." Pursuant to the terms of the agreement, the ATMI settlement payment date was May 20, 2008.

5

On December 11, 2008, Yu settled with HPJA by which Zurich American, on behalf of HPJA, would pay Yu $260,000 in cash, HPJA stipulated to a $10 million judgment against it, and HPJA assigned to Yu its rights against its insurance companies.

V.

YU FILES THE INSTANT INSURANCE COVERAGE ACTION AGAINST, INTER ALIA, WEST BEND AS ASSIGNEE OF ATMI'S RIGHTS

On March 25, 2009, Yu filed the instant insurance coverage action against West Bend and 20 other alleged "non-participating insurers who failed to defend, indemnify, contribute or otherwise participate in the underlying [c]onstruction [a]ction." Yu alleged she brought this action as the assignee of certain rights and claims against West Bend and the other named defendants that previously belonged to parties and their insurers pursuant to her settlement with such parties in the underlying construction defect action.

On August 3, 2009, Yu's counsel wrote a letter to West Bend enclosing correspondence from counsel for another defendant in the instant insurance coverage action, Illinois National Insurance Company. In the letter, Yu's counsel explained Illinois National was claiming that West Bend "in fact, issued a primary commercial general liability policy to [certain ATMI parties] for the period June 30, 2002–June 30, 2003." The letter further stated: "Previously, both ATMI (and Plaintiff, as subsequent assignee of ATMI's rights under all policies) and counsel for ATMI believed that Illinois National issued the primary insurance for that period. Illinois National claims that the enclosed Certificate of Liability Insurance has a typographical error that lists Illinois National as the primary carrier."

In August 2009, Yu filed the first amended complaint which is the operative complaint in this matter. She asserted claims for declaratory

6

relief, breach of insurance contract, and bad faith breach of the implied covenant of good faith and fair dealing, as well as a claim for "equitable subrogation/contribution indemnity" against West Bend and all other defendants except defendant Sequoia Insurance Company. Yu prayed for $20 million in compensatory damages and an award of punitive damages.

On August 31, 2009, Columbian notified West Bend of the instant insurance coverage lawsuit.

*A. Phase One of Bench Trial on Claims Alleged Against West Bend*

As to Yu's claims against West Bend in the instant action, the trial court bifurcated the trial into two phases. In phase one of what the parties agreed would be a court trial, the court was to initially determine the answer to a single question: whether the facts alleged in the operative complaint of the construction defect action "created a potential for coverage to trigger [West Bend]'s duty to defend its insureds in that action." In its statement of decision, the court concluded West Bend was unable to prove the underlying claims against ATMI did not fall within the coverage of the West Bend policies. Consequently, the court further concluded, as the potential for coverage existed, West Bend's duty to defend the ATMI parties in the construction defect action would have been triggered.

*B. The Evidence Code Section 405 Hearings*

After phase one of the trial, and in anticipation of phase two, the trial court held hearings pursuant to Evidence Code section 405. At the first hearing, the court concluded the only rights assigned by Zurich to Yu were rights of subrogation, and not rights of contribution. Accordingly, the court ruled, any claims by Yu seeking contribution from West Bend based on Zurich's participation in the Yu-ATMI settlement (Yu sought such contribution in the amount of about $4 million) were barred.

7

The trial court concluded Yu could not recover from West Bend $1.9 million of the amount she settled with ATMI because that amount constituted uninsurable restitution. (See *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266 ["It is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired. Such orders do not award 'damages' as that term is used in insurance policies"].)

Yu filed a petition for a writ of mandate, prohibition, or other appropriate relief as to the trial court's ruling with respect to the portion of the settlement agreement that constituted uninsurable restitution. A panel of this court summarily denied Yu's petition.

*C. Phase Two of Bench Trial on Claims Against West Bend*

Yu and West Bend thereafter stipulated to a court trial on the remaining issues they agreed still needed to be decided in phase two. With the exception of live testimony from a single witness, the phase two trial involved the presentation of documentary evidence, including deposition testimony, all of which were admitted into evidence.

Following trial, the trial court issued a proposed statement of decision to which Yu filed objections. The court thereafter issued its final statement of decision in which it stated Yu's objections "have been considered." Noting the parties had stipulated "as to the issues to be decided" in the phase two trial, the court addressed each of the issues in the final statement of decision.

Dispositively, the trial court determined West Bend had not received notice of the underlying construction defect action until well after Yu, the ATMI parties, and HPJA had settled the matter. Consequently, the

court concluded there was no basis for Yu to recover against West Bend in this matter.

Judgment was entered in favor of West Bend. Yu timely appealed.

## DISCUSSION

In her opening brief, Yu challenges the trial court's dispositive determination she could not recover from West Bend because West Bend had not received notice of the construction defect action until well after Yu entered the settlement agreement with the AMTI parties and HPJA. Following a completed bench trial, we review questions of fact decided by the trial court for substantial evidence and we independently review legal issues de novo. (*Orange County Water Dist. v. MAG Aerospace Industries, Inc.* (2017) 12 Cal.App.5th 229, 239–240.) For the reasons we explain, we conclude the court did not err in its determination.

## I.

### THE WEST BEND POLICIES CONTAINED A STANDARD NOTICE PROVISION

As is the case with most liability policies, the West Bend policies required its insured to give West Bend prompt notice of any third-party claim or lawsuit. (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2025) ¶ 7:407, p. 176.) Specifically, in the section of the West Bend policies entitled "Commercial General Liability Conditions," the insured's duties, in the event of an occurrence, offense, claim or suit, included the following: "If a claim is made or 'suit' is brought against any insured, you must: [¶] (1) Immediately record the specifics of the claim or 'suit' and the date received; and [¶] (2) Notify us as soon as practicable. [¶] You must see to it that we receive written notice of the claim or 'suit' as soon as practicable."

9

Yu does not in any way challenge the applicability or enforceability of the standard notice provision in the West Bend policies in this case. She also does not challenge the trial court's finding "[t]here is no evidence that West Bend was directly notified of the [construction defect action] before August 2009 [when the operative pleading in the instant insurance coverage case was filed] or that there was any effort by ATMI or Yu to communicate with West Bend or follow up with Columbian before 2009."

## II.

### SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S FINDING THE 2006 SCHUSTER LETTER DID NOT PROVIDE WEST BEND NOTICE

Yu argues West Bend received notice the West Bend policies were implicated in the construction defect action when the 2006 Schuster letter, along with the enclosed copy of the fourth amended complaint filed in that action, were sent to Columbian; the trial court found in its statement of decision Columbian had acted as West Bend's agent at "all relevant times."

The trial court rejected Yu's notice argument, stating in its statement of decision "[a] close examination of that letter and other evidence" convinced the court the letter did not constitute sufficient notice of West Bend's obligations under the West Bend policies. Substantial evidence supports that finding.

The 2006 Schuster letter, which was admitted into evidence at the phase two trial, stated it constituted "Tender of Defense and Indemnity" for the ATMI parties solely with respect to two specifically identified insurance policies—an America Zurich policy and an umbrella policy issued by American International Specialty Lines. The text of the letter confirms its limited scope: to place the recipients on notice that Marko was entitled to

10

both a defense and indemnity under the identified comprehensive general liability policy.

Nothing in the 2006 Schuster letter implicates, much less references, any other insurance company or policy. Schuster testified at his deposition that, inter alia, he sent the letter to Columbian so it would tender it to Zurich. The record establishes Columbian represented several insurance companies, and at some point in the course of the construction defect action, Columbian accepted tender on behalf of two unidentified insurance companies. Nothing in the letter suggested the letter was sent to Columbian because of its agency relationship with West Bend.

While a copy of the fourth amended complaint in the construction defect action was enclosed with the 2006 Schuster letter, that pleading showed Yu had asserted claims against a host of entities and individuals. The contents of the letter framed the relevance of its enclosure as establishing Marko's status as an ATMI employee and named defendant in the construction defect action.

The 2006 Schuster letter specifically asked for the "immediate confirmation of the receipt of this tender of defense and indemnity and an acknowledgement that the tender will be accepted on . . . Marko's behalf." The record establishes the letter's stated objective was accomplished as it is undisputed American Zurich responded to the call of the letter and thereafter provided a defense in the construction defect action accordingly. Under these circumstances, there was no further action item, and none was asked for, after American Zurich accepted tender.

In her opening brief, Yu argues the 2006 Schuster letter put West Bend, via Columbian's receipt of the letter, on constructive notice of its contractual duty to defend the ATMI parties in the construction defect action.

11

Yu cites *OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.* (2009) 175 Cal.App.4th 183, 200, which states in part: "'Tender can be either formal or constructive. [Citations.]' [Citation.] Thus, although the duty to defend ordinarily arises after receipt of an actual tender of defense, it *may* arise upon receipt of 'constructive notice' of the contractual duty to defend." (Italics added.)

To the extent Yu argues, with respect to her bad faith claim, that West Bend had constructive knowledge of the construction defect action, her argument is without merit. It is well established an insurer must have had actual notice of facts obligating it to defend in order to be liable for bad faith. (See Croskey et al., Cal. Practice Guide: Insurance Litigation*, supra*, ¶ 12:603, p. 98 ["For a bad faith action to lie, the insurer must have had *actual* notice of *facts* obligating it to defend" and "[k]nowledge merely of facts that should have led it to make further inquiry is not enough"], citing *California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 58.) Therefore, West Bend's lack of actual notice necessarily defeats any such claim.

With respect to breach of contract liability against an insurer, an insurer owes a defense if it "had notice of facts that would put a *reasonable person* on inquiry and it failed to make such inquiry." (Croskey, et al. Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 12:605, p. 98, italics added, citing *California Shoppers, Inc. v. Royal Globe Ins. Co., supra*, 175 Cal.App.3d at p. 37.)

"By their nature, issues related to the 'reasonableness' of a party's conduct often implicate disputed issues of fact." (*Hedayati v. Interinsurance Exchange of the Automobile Club* (2021) 67 Cal.App.5th 833, 847.) In its statement of decision, the trial court found, under the particular

circumstances of this case, the 2006 Schuster letter did not put Columbian, as West Bend's agent, *on inquiry* of West Bend's obligations in the construction defect action. Substantial evidence supports the court's finding. As the court explained, the following evidence shows the reasonableness of Columbian's conduct of not conducting an inquiry: (1) Columbian is an insurance agency that serves as agent for multiple insurers and even accepted tender on behalf of two unidentified insurance companies in connection with the construction defect action; (2) the 2006 Schuster letter sent to Columbian was limited in effect to tendering the defense and indemnity of the construction defect action vis-a-vis the ATMI parties with respect to two specific insurance policies from two specific insurance companies, neither of which was West Bend; and (3) the 2006 Schuster letter successfully "led to the requested coverage from Zurich being provided."

In addition, excerpts from Schuster's deposition admitted at trial included his testimony he sent that letter to Columbian so that its representative Lee McWethy would tender the letter to Zurich. Although Schuster further testified he *hoped* McWethy might tender the letter to "anyone else that had insurance that was issued to ATMI," such sentiment is not suggested in the text of the letter which communicated a very specific and limited tender. In any event, Schuster's testimony shows Columbian was a recipient of the letter because of its relationship to American Zurich and not because of West Bend.

Furthermore, as noted in the statement of decision, although West Bend's policy stated the insured "'must see to it that [West Bend] receive written notice of the claim or "suit" as soon as practicable,'" we note there is no evidence the ATMI parties or any other party in the construction defect action *saw to it* West Bend received notice of that action akin to the

13

requests and information contained in the 2006 Schuster letter with respect to American Zurich.[3]

In the 2006 Schuster letter, Marko's counsel requested the "immediate confirmation" of American Zurich's "receipt of this tender of defense and indemnity and an acknowledgment that the tender will be accepted on . . . Marko's behalf." The letter further advised there were then "several matters currently pending which require[d] immediate attention, including upcoming depositions of the plaintiff and her representative and Mr. Marko's production of documents." No such confirmation and advisement was requested in the 2006 Schuster letter or otherwise with respect to any other insurer, including West Bend.[4]

---

[3] We reject Yu's suggestion the trial court shifted the burden of proof on the notice issue to Yu. Yu points to comments in the statement of decision whereby the court noted the ATMI parties' abject failure to ever follow up with Columbian or West Bend regarding the West Bend policies in the construction defect action. We construe the court's comments in this regard as part of the court's consideration of the particular circumstances of this case and not to show the court misapplied the governing burden of proof.

[4] Yu also argues West Bend was placed on notice of potential claims in the construction defect action no later than 2007 based on a 2007 communication between an ATMI attorney and a Columbian customer service representative Jo-Ann Billo. That communication occurred in the context of Billo assisting ATMI's counsel by gathering documentation to support a claim for coverage under a policy issued by another insurer. Substantial evidence shows West Bend was neither given actual notice nor placed on inquiry notice of claims against it by virtue of Billo's communication with ATMI's counsel. To the contrary, the record shows neither ATMI nor Yu were aware West Bend policies might be implicated in the construction defect action at that time and neither made any effort to provide West Bend notice of that fact, via Columbian or otherwise, until well after the date Yu settled with the ATMI parties in 2008.

Yu does not address the sufficiency of the evidence supporting the trial court's finding on notice in her appellate briefs. We reject any suggestion the mere transmittal of a pleading with an insured's name listed as a defendant to an insurance company or agent *automatically* provides sufficient notice of an insurer's obligations regardless of the attendant circumstances. Yu has not furnished any legal authority supporting such a per se rule for notice.

III.

WEST BEND WAS NOT REQUIRED TO SHOW PREJUDICE IN LIGHT OF ITS POLICIES' NO-VOLUNTARY-PAYMENT PROVISION

In her opening brief, Yu argues even if it had received late notice, West Bend was required to show "it suffered prejudice by virtue of the purportedly delayed notice" but it did not do so. (See *Safeco Ins. Co. of America v. Parks* (2009) 170 Cal.App.4th 992, 1003–1004 ["An insured's failure to comply with the notice or claims provisions in an insurance policy will not excuse the insurer's obligations under the policy unless the insurer proves it was substantially prejudiced by the late notice"].) West Bend, however, need not show prejudice here because it was not given notice of the construction defect action before Yu and the ATMI parties settled and payments were made by the ATMI parties without West Bend's consent, in violation of the West Bend policies' no-voluntary-payment clause.

"'California law enforces . . . no-voluntary-payments provisions in the absence of economic necessity, insurer breach,[5] or other extraordinary

---

[5] Here, the record shows the ATMI parties settled with Yu before West Bend had the opportunity to breach its contract with the ATMI parties by refusing to defend or indemnify them under the West Bend policies. That West Bend challenges Yu's right to recover against it in the instant insurance coverage action does not render the no-voluntary-payment provisions of those policies ineffective or unenforceable.

circumstances. [Citations.] They are designed to ensure that responsible insurers that promptly accept a defense tendered by their insureds thereby gain control over the defense and settlement of the claim. *That means insureds cannot unilaterally settle a claim before the establishment of the claim against them and the insurer's refusal to defend in a lawsuit to establish liability* . . . . [T]he decision to pay any remediation costs outside the civil action context raises a "judgment call left solely to the insurer . . . ." [Citation.] In short, the provision protects against coverage by fait accompli.' [Citation.] [¶] '[U]nlike a notice provision or a cooperation clause, [a no-voluntary-payment] provision can be enforced without a showing of prejudice: "'[T]he existence or absence of prejudice to [the insurer] is simply irrelevant to [its] duty to indemnify costs incurred *before* notice. The policy plainly provides that notice is a *condition precedent* to the insured's right to be indemnified; a fortiori the right to be indemnified cannot relate back to payments made or obligations incurred before notice""'" (*Low v. Golden Eagle Ins. Co.* (2003) 110 Cal.App.4th 1532, 1544–1545, first italics added; see *Gribaldo, Jacobs, Jones & Associates v. Agrippina Versicherunges A.G.* (1970) 3 Cal.3d 434, 449 [purpose of no-voluntary-payment clause "'is to prevent collusion as well as to invest the insurer with the complete control and direction of the defense or compromise of suits or claims'"].)

The West Bend policies' no-voluntary-payments clause stated: "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent." As explained in the statement of decision: "Because West Bend was not given notice of the [construction defect action] before any settlement payments were made by ATMI, and because West Bend did not consent to those payments, they clearly qualify as 'voluntary payments'

16

pursuant to this provision. As a result they are not covered by the applicable insurance policies."

In sum, given the lack of notice discussed *ante*, the trial court did not err by concluding West Bend is not liable to Yu for any failure to defend or indemnify the ATMI parties pursuant to the West Bend policies. Because the lack of notice finding is dispositive, we do not reach Yu's arguments challenging the other determinations made by the court in its statement of decision and in its pretrial rulings, all of which affected the type and scope of damages Yu might have been eligible to recover in the instant insurance coverage action had such notice been provided.

## DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.


MOTOIKE, P. J.

WE CONCUR:


MOORE, J.


GOODING, J.

17